IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAN NEWELL and
BRIDGETTE NEWELL,

    Plaintiffs,

  v.

WELLS FARGO BANK, N.A.,

    Defendant.

No. C 10-05138 WHA

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this bankruptcy adversary proceeding, defendant moves for summary judgment on all claims. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

Plaintiffs Dan and Bridgette Newell bring this adversary action against defendant Wells Fargo Bank, N.A., to quiet title to a residential property in California. Plaintiffs allege the wrongful foreclosure on a loan secured by a deed of trust, and seek to set aside the trustee's sale (First Amd. Compl. ¶¶ 16, 21, 25, 31).

In December 2006, plaintiffs received a $506,250 loan secured by a deed of trust recorded against the property at issue (Compl. ¶ 5; Dkt. No. 27 [request for judicial notice] Exhs. 1, 2).[1] The adjustable rate loan was assigned to Wachovia Mortgage, a federal savings bank, which was subsequently acquired by defendant Wells Fargo, a national bank.

---

[1] Wells Fargo requests judicial notice of various public records and government documents. Plaintiffs have not opposed. The request for judicial notice is **GRANTED**.

In March 2009, the United States Department of Treasury announced the details of the Home Affordable Modification Program as part of the Making Home Affordable Program. Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives (RJN Exh. 10 at Sections 1, 4). Wells Fargo entered into the HAMP agreement.

Beginning in late 2008, plaintiffs had trouble making payments (Compl. ¶ 6; Bridgette Newell Depo. at 19:03–05). In August 2009 a notice of default was recorded against the property, reciting $9,990 in arrears as of August 12, 2009. (RJN Exh. 7).

In September 2009, plaintiffs applied for a modification of their loan (Dolan Decl. ¶ 5; Exh. 2). In October 2009, plaintiffs were approved and offered a permanent loan modification (Dolan Decl. ¶ 6, Exh. 3). Plaintiffs received the written modification offer, but missed the deadline to respond and never accepted (Dolan Decl. ¶ 8; Dan Newell Depo. at 45:13–48:11; Bridgette Newell Depo. at 19:12–20:19).

A couple of weeks after the modification offer expired, plaintiffs called to apply for another loan modification (Dolan Decl. ¶ 9). Mr. Newell was informed that plaintiffs needed to submit certain documents, specifically their 2008 tax returns, last three months of bank statements, and profit and loss statements for their business (Dolan Decl. ¶ 10, Exh. 4 at 1 (10/28/2009 04:38:53 PM entry)).

On November 23, 2009, a notice of trustee's sale was recorded against the property, reciting a total debt of $574,500. (RJN Exh. 8).

On November 25, 2009, Mr. Newell called Wachovia to ask for an extension to send in the required documents (Dolan Decl. ¶ 11, Exh. 4 at 1 (11/25/2009 08:08:53 PM entry)). In December 2009, plaintiffs' application package was received by the bank. However, this package did not contain any bank statements (Dolan Decl. ¶¶ 12, 14, Exh. 4 at 2 (01/11/2010 01:19:32 PM entry), Exh. 5). In January 2010, a letter was sent to plaintiffs informing them that Wachovia was "unable to offer you a Home Affordable Modification because you did not provide us with the

2

1  documents we requested." (Dolan Decl. ¶ 15, Exh. 6). Plaintiffs received this letter (Dan Newell
2  Depo. at 83:04–85:04; Bridgette Newell Depo. at 31:11–22).

3  On February 5, 2010, Mr. Newell called to apply again for another loan modification
4  (Dolan Decl. ¶¶ 16, 17, Exh. 4 at 2–3). On February 16, 2010, two letters were sent out to
5  plaintiffs regarding their application.

6  The first letter was sent due to a "clerical error" and informed plaintiffs that they were
7  being denied a loan modification because they were "current on their mortgage" and because they
8  had "sufficient net income to pay" their loan (Dolan Decl. ¶ 18, Exh. 7). There is a dispute
9  between the parties as to whether this letter made plaintiffs' loan current. It is undisputed that
10 plaintiffs made no payments between June 2009 through April 2010 (Dolan Decl. ¶ 19, Exh. 8
11 at 8–11).

12 The second letter sent on February 16, 2010, was the correct letter meant to be sent and
13 informed plaintiffs that Wells Fargo had "not received documentation needed to finalize
14 [plaintiffs'] pending" loan modification application (Dolan Decl. ¶ 20, Exh. 9). The second letter
15 was received by plaintiffs. Mr. Newell recalled that he received the two letters around the same
16 time, and that he was confused to what the first letter meant (Dan Newell Depo. at 93:01–96:24).

17 On February 19, 2010, Ms. Chua Ho, a Wells Fargo representative, called Mr. Newell and
18 reminded him that the profit and loss statements and bank statements needed to be updated on his
19 loan modification application (Dolan Decl. ¶ 21, Exh. 4 at 3 (02/19/2010 05:46:43 PM entry);
20 Dan Newell Depo. at 75:13–76:05). Mrs. Newell recalled that after receiving the second letter,
21 she worked on updating the profit and loss statements intermittently, but did not finish them as of
22 the end of March (Bridgette Newell Depo. at 38:09–38:25).

23 On March 5, 2010, a letter was sent to plaintiffs informing them that their request for
24 mortgage assistance had been closed due to "non-receipt of required documentation or
25 information" and that if the loan is "delinquent and/or in foreclosure, Wachovia will continue to
26 move forward with collection efforts and any rights and/or remedies it may have" (Dolan Decl. ¶
27 22, Exh. 10).
28

3

1    On March 8, 2010, Mr. Newell called Ms. Ho to tell her that they were having trouble
2 putting together the required profit and loss statements and needed more time (Dan Newell Depo.
3 at 76:19–77:01). On that call, Ms. Ho informed Mr. Newell that the loan modification application
4 had expired due to missing documents ("fallout") and that the "file is in foreclosure status." The
5 call record also indicated that Ms. Ho advised that the application could be "resubmitted" if all
6 the required documents were filed (Dolan Decl. ¶ 23, Exh. 4 at 3 (03/08/2010 07:42:48 PM
7 entry)). Mr. Newell recalled this conversation with Ms. Ho and testified at his deposition: "She
8 said, 'It's very important for you to produce this [meaning profit and loss statements]. You can
9 still submit your package. You need to do this as quick as you can, ASAP." (Dan Newell Depo. at
10 77:20–22).

11    On April 9, 2010, Mr. Newell called Ms. Ho to tell her that the profit and loss statements
12 would be coming in a day or so. Ms. Ho informed him on that call that the trustee's sale on the
13 property already took place on April 7, 2010. (Dolan Decl. ¶ 24, Exh. 4 at 3 (04/09/2010 04:20:17
14 PM entry); Dan Newell Depo. at 79:17–80:25). The total outstanding debt on the Loan was
15 $583,263.66 at the time of the foreclosure sale (Dolan Decl. ¶ 25, Exh. 11). A trustee's deed
16 upon sale was recorded later that month (RJN Exh. 9). Plaintiffs never submitted the required
17 profit and loss statements.

18    On April 30, 2010, plaintiffs filed a complaint to quiet title in a bankruptcy adversary
19 proceeding before this district's bankruptcy court. The adversary proceeding (No. 10-04110) was
20 related to a bankruptcy proceeding in which Bridgette Newell was the debtor (No. 10-44111). In
21 December 2010, this action was moved into this Court because disposition of the plaintiffs'
22 claims required material consideration of non-bankruptcy federal law (Dkt. No. 7 at 2).
23 Defendant filed this motion for summary judgment on December 1, 2011 (Dkt. No. 26). Plaintiffs
24 did not oppose and stated that "further prosecution of the case [is] untenable" in an email sent to
25 the Court on the morning of the hearing.

**ANALYSIS**

27    Summary judgment is proper when the "pleadings, depositions, answers to interrogatories,
28 and admissions on file, together with the affidavits, show that there is no genuine issue as to any

4

material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). All reasonable inferences, however, must be drawn in the light most favorable to the non-moving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

1. **SECTION 2924 CLAIM.**

Plaintiffs allege that Wachovia made their loan current on February 16, 2010, because the first letter stated so. Plaintiffs allege that if the loan was current in February, then Wells Fargo violated California Civil Code 2924 by not recording and serving a new notice of default or new notice of trustee's sale three months before the foreclosure sale in April 2010.

A. **There Is Insufficient Evidence To Find That the Loan Was Current**.

California Civil Codes 2924 through 2924k provide a framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. Upon default by the trustor under a deed of trust containing a power of sale, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. Cal. Civ. Code 2924.

Trustor has opportunities to prevent foreclosure by curing the default. The trustor may make back payments to reinstate the loan up until five business days prior to the date of the sale, including any postponement. Cal. Civ. Code 2924c(a)(1), (e). Additionally, the trustor has an equity of redemption under which the trustor may pay all amounts due at any time prior to the sale to avoid loss of the property. Cal. Civ. Codes 2903, 2905.

The dispute between the parties is whether plaintiffs loan was current in February 2010. Wells Fargo argues that plaintiffs were not current on their loan because they had not made any payments since June 2009. Plaintiffs argue that their loan was current because the first letter sent

out by Wells Fargo on February 16, 2010, stated that plaintiffs' loan application was denied because they were "current on your mortgage loan" (Dolan Decl. Exh. 7).

Plaintiffs had not made payments for nearly a year before the foreclosure and it was unreasonable to think that the loan was current. Plaintiffs made no payments from June 17, 2009 onward (Dolan Decl. Exh. 8). Plaintiffs confirmed that they did not make payments at their deposition (*see* Bridgette Newell Depo. at 33:02–34:24). While payment of the arrears can cure a default, plaintiffs' contention that a lender's erroneous letter can make a borrower current is unreasonable and has no basis in law. *See* Civil Code Sections 2924c, 2903, 2905. Plaintiff fails to provide any other evidence suggesting that the loan was current. Thus, there is insufficient evidence to find that the loan was current and no longer in default.

### B. There Is Insufficient Evidence To Find That Plaintiffs Were Prejudiced by the First Letter.

A non-judicial foreclosure sale in California is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption "by pleading and proving an improper procedure and the resulting prejudice." *Knapp v. Doherty*, 123 Cal. App. 4th 76, 86 (2004)*; see also Lehner v. United States*, 685 F.2d 1187, 1190–91 (9th Cir. 1982) (upholding a foreclosure even though the notice of default was allegedly sent to the wrong address, but other facts show that the borrower was aware of the pending sale).

Plaintiffs have not provided any factual support to find that they were prejudiced by the erroneous first letter sent on February 16, 2010. *First*, plaintiffs had opportunities to, but failed to, clarify how their loan could have become current without any additional payments or why they received contradictory letters at the same time about the status of their loan. The first letter stated that plaintiffs' loan application was denied because they were "current on [their] mortgage loan" (Dolan Decl. Exh. 7). The contradictory and correct second letter, which arrived at the same time, informed plaintiffs that Wells Fargo had "not received documentation needed to finalize [plaintiffs'] pending" loan modification application (Dolan Decl. Exh. 9). Mr. Newell testified that while he was confused by the first letter, he did not contact Wachovia to clarify the letter (Dan Newell Depo. at 95:07–96:24). Nor did plaintiffs ask Ms Ho to clarify whether their loan was current on subsequent calls with Wachovia (*id.* at 98:07–18).

6

Based on the submitted evidence, the only reasonable finding is that plaintiffs remained aware that they were in default even after the first letter. Ms. Ho informed plaintiffs after February 16, 2010, that the property was in foreclosure. Plaintiffs knew that they had not made any payments on the loan in nearly a year. Plaintiffs' actions show that they did not rely on the first letter. That is, they acted as if their loan modification application was still open: after receiving both letters, plaintiffs worked on updating the profit and loss statements intermittently, as requested by the *second letter*. (Bridgette Newell Depo. at 38:09–38:25). If plaintiffs relied on the first letter, they would not have tried to submit updated profit and loss statements because the first letter stated that their loan modification application was denied.

*Second*, plaintiffs do not allege, and have no evidence to suggest, that they could have made their loan current even if the erroneous first letter had not been sent. Plaintiffs have not shown prejudice and do not explain why the foreclosure would have been averted but for the erroneous first letter.

### C. Preemption and Res Judicata.

Plaintiffs' Section 2924 claim fails because there is insufficient evidence to find that the loan was current in February 2010 and insufficient evidence to show that plaintiffs were prejudiced by the erroneous first letter. As such, there is no need to decide whether plaintiffs' claim is preempted by the Home Owners' Loan Act or the National Bank Act, nor whether Wells Fargo's motion to stay in Mrs. Newell's chapter 13 bankruptcy proceeding was res judicata of the tender requirement to void the foreclosure sale.

### 2. BREACH OF DEED OF TRUST CLAIM.

Plaintiffs allege that Wells Fargo breached the deed of trust agreement because it foreclosed in violation of California Civil Code 2924. Since there is insufficient evidence to find a violation of Section 2924, plaintiff's breach of deed of trust claim also fails.

### 3. CLAIMS PURSUANT TO THE HOME AFFORDABLE MODIFICATION PROGRAM.

HAMP is a loan modification program designed to reduce delinquent and at-risk borrowers' monthly mortgage payments. HAMP was authorized by Congress as part of the Emergency Economic Stabilization Act of 2008, which has the stated purpose of giving the

1  Secretary of the Treasury the "authority and facilities" necessary "to restore liquidity and stability
2  to the financial system of the United States." 12 U.S.C. 5201(1).

3  Under the terms of the HAMP agreement and Treasury regulations, Wells Fargo is
4  required to evaluate borrowers for loan modifications within thirty days, grant loan modifications
5  to qualified borrowers, forebear from foreclosure during the time that an application for a loan
6  modification is pending, and advise loan modification applicants of the prohibition on foreclosure
7  sales (*see* Dkt. No. 11 (Treasury Department's Supplemental Directive 10-02)).

8  Plaintiffs allege that the foreclosure sale violated HAMP regulations because plaintiffs
9  had a pending loan modification application at the time of the sale.

### A.   No Private Cause of Action To Enforce HAMP.

11  Plaintiffs lack standing to enforce the HAMP agreement between Wells Fargo and the
12  United States. Plaintiffs allege both a stand-alone right to enforce the HAMP agreement and right
13  to enforce as third-party beneficiaries.

14  Any private right of action for violating a federal statute must ultimately rest on
15  congressional intent to provide a private remedy. *Astra USA, Inc. v. Santa Clara County, Cal.*,
16  131 S.Ct. 1342, 1347 (2011). Parties that benefit from a government contract are generally
17  assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to
18  the contrary. Government contracts often benefit the public, but individual members of the public
19  are treated as incidental beneficiaries unless a different intention is manifested. *Klamath Water*
20  *Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210–11 (9th Cir. 2000).

21  Plaintiffs were not party to the HAMP agreement between Wells Fargo and Fannie Mae,
22  acting as agent to the United States. Section 11E of the HAMP agreement provided: "The
23  agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their
24  permitted successors in interest" (RJN Exhibit 10). Wells Fargo and Fannie Mae are the only
25  parties to the agreement.

26  Sections 6 and 7 of the HAMP agreement refer only to Fannie Mae regarding remedies for
27  events of defaults or acts of bad faith: "Fannie Mae may take any, all, or none of the following
28  actions upon an Event of Default by Servicer under the Agreement:…" (RJN Exh. 10 at Section

8

1 6B). "Fannie Mae may take any, all, or none of the following actions if an Act of Bad Faith
2 involving an Investor or a borrower occurs, …" (*id.* at Section 6C). There is no reference to
3 individual borrowers regarding remedies under the HAMP agreement, only Fannie Mae: "The
4 remedies available to Fannie Mae upon an Event of Default or an Act of Bad Faith under this
5 Section are cumulative and not exclusive; further, these remedies are in addition to, and not in
6 lieu of, any other remedies available to Fannie Mae at law or in equity" (*id.* at Section 6I). There
7 is no clear intent in the statute or regulations to give plaintiffs standing.

8 Although the HAMP agreement between Wells Fargo and Fannie Mae was entered into
9 with the intent of aiding home-loan borrowers, such as plaintiffs, the language of the agreement
10 itself did not grant borrowers enforceable rights. The right to a loan modification evaluation was
11 enforceable only through an administrative process:

> The Treasure Guidelines advise borrowers denied a loan modification can contact the Homeowner's HOPE Hotline and speak with a trained housing counselor regarding the HAMP program. If the counselor believes that the borrower's application was improperly denied, the counselor can refer the concern to the servicer's senior-level management. If that senior-level official cannot resolve the issue, the counselor can further escalate the case to a designated team at Fannie Mae whose responsibility includes resolving individual and systemic problems. In addition, to monitor participating servicers' compliance with the HAMP, Freddie Mac, at the direction of Treasury, instituted a second-look process in which it audits a sample of loan modification applications that have been denied to minimize the likelihood that borrower applications are overlooked or inadvertently denied

18 *Williams v. Timothy F. Geithner*, 2009 U.S. Dist. LEXIS 104096 at *3 (D. Minn. Nov. 9, 2009)
19 (citing the declaration of the Director of Policy for the Treasury's Homeowner Preservation
20 Office). Nothing about HAMP demonstrated a clear intention to grant the borrowers enforceable
21 rights. Other courts have similarly interpreted identical HAMP agreements and have come to the
22 conclusion that a borrower is not a third-party beneficiary with the right of enforcement. *See,*
23 *e.g.*, *Nelson v. Bank of America, N.A.*, 2011 U.S. App. LEXIS 22255 (11th Cir. Oct. 31, 2011)*;*
24 *Hoffman v. Bank of Am., N.A.*, No. 10–2171, 2010 WL 2635773 (N.D. Cal. June 30, 2010)
25 (Illston, J.); *Wright v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 73807 (N.D. Cal. 2010)
26 (Fogel, J.).

9

### B. Insufficient Facts To Find Violation of HAMP.

Plaintiffs claim that the alleged violation of HAMP regulations constituted an unfair business practice under Section 17200. This order finds that there is not sufficient evidence to find that Wells Fargo violated HAMP, and so plaintiffs' Section 17200 claim fails.[2]

There is not sufficient evidence to find that plaintiffs had active, pending loan modification application at the time of foreclosure. Instead, the evidence shows that plaintiffs' final application was closed before foreclosure. Plaintiffs' third, and final, loan modification application was submitted on February 5, 2010. The second letter received by plaintiffs on February 16 informed them that their application was missing required documents (Dolan Decl. Exh. 9). On February 19, Ms. Ho called Mr. Newell and informed him that the profit and loss statements and bank statements needed to be updated (Dolan Decl. ¶ 21, Exh. 4 at 3 (02/19/2010 05:46:43 PM entry); Dan Newell Depo. at 75:13–76:08). Plaintiffs never provided the required documents.

On March 5, 2010, a letter was sent to plaintiffs informing them that their request for mortgage assistance had been closed due to "non-receipt of required documentation or information" and that if the loan is "delinquent and/or in foreclosure, Wachovia will continue to move forward with collection efforts and any rights and/or remedies it may have" (Dolan Decl. ¶ 22, Exh. 10).

On March 8, 2010, Ms. Ho informed Mr. Newell that the loan modification application had expired due to missing documents ("fallout") and that the "file [was] in foreclosure status." The call record also indicated that Ms. Ho advised that the application can be "resubmitted" if all the required documents are filed (Dolan Decl. Exh. 4 at 3 (03/08/2010 07:42:48 PM entry); Dan Newell Depo. at 77:09–25).

---

[2] Since this order finds that there is not sufficient evidence to show that Wells Fargo violated HAMP, there is no need to decide whether the Section 17200 claim is preempted.

Plaintiffs fail to submit any evidence to suggest that Wells Fargo foreclosed the property while plaintiffs had an active, pending application. As such, there is insufficient evidence to show that Wells Fargo violated HAMP.

## CONCLUSION

For the reasons stated, the motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 5, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE